Rebecca Smith, Counsel Table with me is Timothy Bechtel. Together we represent the appellants, Friends of the Wild Swan and Alliance for the Wild Rockies. We are here today on what is surprisingly a matter of first impression before this court, whether the courts have jurisdiction to review a challenge to a recovery plan that is issued under the Endangered Species Act. And although a number of district courts have actually allowed these challenges to recovery plans to go forward for the past two decades, this is actually the first time that this jurisdictional question has come before any appellate court. And with... Your position is that a recovery plan is a final agency action? Yes, Your Honor. And even before then, our position is that it's actually the ESA citizen suit provision that provides the court with jurisdiction. Because under the ESA citizen suit provision, a challenge to a requirement in Section 1533 that is not discretionary can be brought under the ESA citizen suit provision. And so we can look to guidance on this question to the Supreme Court's decision in Bene V. Speer. In that case, the government had argued that the requirement under Section 4 that the Secretary shall address economic impacts in a critical habitat rule, the government argued that that was also discretionary. The Supreme Court instead said, actually, shall means shall. Shall is non-discretionary. And so it is a non-discretionary duty that the Secretary address economic impacts in a critical habitat rule. And our position is that that same law applies to this case. Because a recovery plan is a requirement also under Section 1533, which is also called Section 4. It's Section 4F. And so that's half of the equation. I'll go back to Bennett because it seems to me that that's the linchpin of your argument. And as I read Bennett, one of the reasons that the court is characterizing the conduct there as having some finality is that there were some very specific consequences in terms of this immunization from both civil and criminal liability. And we don't really have a parallel to that here. So I'm having some trouble as to how you jump from Bennett and the unusual circumstances there to a recovery plan taking on some life of its own, if you will. So Your Honor, there's a kind of tie those together, if you will. Sure. There's a couple parts to that response, which is that in Bennett, what the Supreme Court did is it found one claim to fall under the ESA citizen suit provision. And then it found a separate claim to fall under the Administrative Procedure Act Final Agency Action. And so I think you're asking about the second part. The biological opinion in that case was what the Supreme Court held was a final agency action subject to review under the Administrative Procedure Act. But the reason it found that that didn't fall under the citizen suit provision was because that wasn't a requirement from Section 1533. Because the biological opinion comes under Section 7, not Section 4. And our position in this case is that a recovery plan does fall into Section 4, just like the critical habitat determination does. So we don't even have to get to the Administrative Procedure Act question. But because you asked about that issue, I will address that what the Supreme Court said in Bene v. Speer regarding... We don't have to get to it. I mean, you have a citizen suit claims and the question of whether we have discretionary or non-discretionary issues. And then you have the recovery plan itself as to whether it provides this independent basis under the Administrative Procedure Act. So they are... I know you're trying to link them, but aren't they in some respects independent determinations? Yes, Your Honor. And if the court finds that a challenge to a recovery plan under Section 4 falls within the citizen suit provision, it does not need to also find that a challenge falls under the Administrative Procedure Act. So that would essentially preclude the necessity of that second determination. And so the reason that our position is that this falls under the Endangered Species Act citizen suit provision is because in Bene v. Speer, the Supreme Court essentially said things fall under the citizen suit provision when they are part of Section 1533 and they are non-discretionary. And the reason the Supreme Court held that the critical habitat, the need to include an economic impact analysis in a critical habitat rule, the reason they found that it was non-discretionary was because the statute uses the word shall. So specifically, the Supreme Court said, the government seeks to avoid this result by appealing to the limitation in Subsection C that the duty sought to be enforced not be discretionary with the Secretary. But the terms of Section 1533b-2 are plainly those of obligation rather than discretion. The Secretary shall designate critical habitat and make revisions thereto on the basis of the best scientific data available and after taking into consideration the economic impact and any other relevant impact. That's 520 U.S. at 172. So the court is looking at do they use the word shall and is it under Section 1533? The ESA citizen suit provision, excuse me, the ESA recovery plan provision also meets those two requirements from Bene v. Speer. First of all, it does fall under Section 1533. We're talking about Section 1533f here. And it does use that mandatory language shall. So at Section 4f-1b, it says the Secretary in developing and implementing recovery plans shall to the maximum extent practicable incorporate in each plan. And then there's a list of things that must be incorporated. And our key issue in this case is the Subsection 2 little i, which says, objective measurable criteria, which when met, would result in a determination in accordance with the provisions of this section, the species be removed from the list. So there is a mandatory provision that a recovery plan include objective measurable criteria, which when met would result in delisting in accordance with the provisions of this section. This is actually more specific than the critical habitat provision addressed in Bene v. Speer. And Your Honor, this court did address Bene v. Speer specifically in the Association of California Water Agencies v. Evans case. And in that case, the government made the same argument basically that it makes today. The government contended, this is this court's opinion at 386 fed third at 883. And it says the defendants, quote, contend that plaintiff's suit was cognizable only under the APA because they assert that defendant's duty is discretionary. However, plaintiff's claims under the ESA fall squarely within Section 1540 G4. And this court went on to say in this case, as in Bene v. Speer, defendants had the categorical requirement to take into habitat. And then this court went on to say, the issue in the case brought by plaintiffs was whether defendants had fulfilled that required duty when they applied the so-called incremental effects analysis to determine the economic impact. So this wasn't a case, as the government presents, where the agency had failed to include any economic impact whatsoever. This was a case where plaintiffs challenged the substance of the economic impact. And this court held that that was an ESA citizen suit provision. And so that's why the sort of procedural versus substantive dichotomy that the government proposes is a false dichotomy. These cases say that when the ESA says shall include something, then this court has the jurisdiction to review whether the government actually included those provisions. Whether it's in a critical habitat determination, whether it's in a listing or delisting rule, or whether it's in a recovery plan. These are all Section 4 requirements, and the citizen suit provision explicitly applies to Section 4 requirements that use that word shall. Can you walk us through Claim 1 in the complaint, under your reading of Bennett, and explain why we would have jurisdiction over that? Yes, Your Honor. Because you would agree that we're limited to the claims in the complaint, correct? Yes, Your Honor. And I'd like to say that before that list of claims in the complaint, I would first point the court to paragraph 39, which is at ER 53 to 54. That is where the law is set out that we are alleging that the government has violated. Paragraph 39 says, Section 4F of the ESA requires the defendants to develop a plan that incorporates, and then they list the requirements, including objective measurable criteria, which when met would result in a determination in accordance with the provisions of the section that the species be removed from this list. The paragraph then says, as set forth below in the claims for relief, the defendants have failed to comply with this legal mandate. So specifically, Claim 1, which basically says that allowing 25% of the species to go into survival and recovery. So what we have to look at in the ESA citizen, in the, excuse me, recovery plan provision, is not just what the government has sort of paraphrased as having delisting criteria. That's not actually all the statute requires. It requires objective measurable criteria that when met would result in delisting under this section. And so delisting under this section means there's five delisting factors that have to be addressed. And the statute also requires in a delisting determination that the best available science be applied. So when we look at this whole statute, it's saying a recovery plan has to have objective measurable criteria, which when met would result in a determination that a species may be delisted under the five-factor test with the application of the best available science. And so each of those eight, the first eight claims, including the first claim, are arguments that what the plan has will not result in delisting under the five-factor test in accordance with the best available science. Because delisting requires not just survival, but recovery. And so when the species is already threatened, and so the argument there is if you allow 25% of the remaining species to go extinct, that's not even meeting that bar for survival and certainly not for recovery. And so that is a more specific claim, but it goes to the fact that the recovery criteria have to lead to delisting under the best available science, which does not allow a species that's already threatened to become further threatened and then be delisted. I think the government, when they get a chance, they're going to stand up and say, well, that reading of, if we read the complaint that way, then basically any challenge to any government decision under the ESA is challengeable for a citizen suit, because you can always repackage it the way you just did. No, Your Honor, because I'm stating exactly what is required in Section F. Objective measurable criteria, which when met would lead to a determination that the species be delisted. Under your reading, what could you not challenge? Well, Your Honor, if it's not part of Section 4, you wouldn't be able to challenge it. So, for example, anything under Section 7, incidental take statements, biological opinions, decisions that there's no effect, all those types of consultation challenges cannot be challenged under the citizen suit provision. But as to Section 4, there's no limit? Well, Your Honor, what one of the district courts found in the, I believe it was the Humpback Chubb in the District of Arizona, that court did distinguish slightly. It took the recovery plan standard and said, well, the first part of this standard makes a general statement about conservation. And we hold that that's not mandatory, that's discretionary. But then the court went on to hold and find that in this listing of the three requirements that have to be in a recovery plan, this part is non-discretionary. And because the agency hadn't met one of those three parts, that was an ESA citizen suit claim. And so, because we have such a specific provision here, it is mandatory under this court's decision in Evans as well as the Supreme Court's decision in Bennett v. Speer. And, Your Honor, even if the court was inclined to agree that the first claim is too general, I would still point the court to the other claims in the complaint because the district court didn't just dismiss the first claim. It dismissed all nine claims. And so all nine claims would have to be flawed. But if we look, for example, at the second claim, at ER 56 at paragraph 49, it says, the plan fails to incorporate population numbers, sizes, etc. The fourth claim says the failure of the plan to include habitat metrics is a violation of the endangered species. That's ER 59 at paragraph 65. The fifth claim says the failure of the plan to effectively or objectively evaluate threats is a violation. That's ER 60. The sixth claim, the plan's reliance on vaguely defined monitoring. That's ER 61. And the third claim, demographic criteria are not included in the plan and the plan that there is no criteria that includes quantitative targets is almost the exact same thing as saying there are no objective measurable criteria. And that is a mandate of Section 4F. There has to be objective and measurable criteria. And so the majority of these claims are all aimed at stating the specific ways that the recovery plan does not have objective measurable criteria that will lead to delisting. And one of the problems in this case is that we didn't actually have a substantive review yet. This case was dismissed on a 12B motion, so we don't even have the administrative record yet. And the district court didn't even look to consider the substance of what's actually in the recovery plan. And so all we're really asking in this case is a remand so that we can present our case on the merits to the district court. Of the half a dozen district court cases that the lower court and the parties have cited in their briefing, every single one of those cases allowed some kind of review of the substance of a recovery plan. And so this case is the anomaly. This is the only district court case that we are aware of where the district court completely refused to address any substantive challenge to the recovery plan. So, for example, we know that the District of D.C. allows these challenges. Those cases are the defenders of Wildlife Bee Babbitt, Fun for Animals Bee Babbitt. That's the grizzly bear recovery plan, the Sonoran pronghorn recovery plan. We also know that within this circuit, the two district court opinions that address recovery plans did allow a substantive challenge. The Gila Trout recovery plan that was Center for Biological Diversity Bee Babbitt. That case specifically addressed this same issue and held defendants contend that this court does not have jurisdiction over this action because the ESA's citizen suit provision provides for enforcement of only non-discretionary acts. Then the district court rejected that argument and held the word shall is an imperative denoting a definite obligation. Therefore, the statutory language of section 1533 demonstrates that Congress unambiguously intended that the secretary be required to incorporate delisting criteria where possible or feasible. That's 1999 Westlaw 33438081. Additionally, the other district court case within this circuit, another District of Arizona case was the Humpback Chubb case that was the Grand Canyon Trust, 2006 Westlaw 167560. Again, they stated regarding the recovery plan, defendants fail to comply with their non-discretionary duty. Accordingly, we grant summary judgment for plaintiffs on this claim. Good morning. May it please the court. My name is Corinne Snow and I represent the United States Supreme Court. I'm here to discuss the case of Bennett v. Speer because I agree that it is sort of the linchpin of this case as well as this circuit's decisions coming out of it. But I think we have a slightly different reading of what the Supreme Court was saying in Bennett. So I think the key is not the word shall, which I think we can all agree creates a mandatory duty. But the fact that the court actually distinguishes between what part of the duty is mandatory and what part is discretionary. So this is at 1116 where the court makes the distinction between, and it's not, your honors, a distinction between what is procedural and substantive, but a distinction that is between what is non-discretionary and discretionary. And in that particular case, it just happened to be that the procedures were the non-discretionary part and the substance was the discretionary. So the court says that it is rudimentary administrative law that the discretion as to the substance of the ultimate decision does not confer discretion to ignore the procedures of the decision making. And your honor, we'd agree with that, but what the appellants are trying to challenge here actually does go to the discretionary substance. So this circuit has been clear in its case law dealing with non-discretionary duty, citizenship provisions, and other environmental statutes. The Clean Air and Clean Water Act that had identical language for all meaningful purposes that this court only looks to whether or not there is a clear, readily ascertainable binary yes or no determination for these non-discretionary duty provisions. So, for example, in Our Children's Earth, even though the court acknowledged that the plaintiffs were putting forth a reading of the statute that was in keeping with the purpose of the statute, that would have furthered the purposes of the goal and where what they were asking for was cited in many other statutory provisions. They nonetheless said that there was not a non-discretionary mandatory duty to read it the way the plaintiffs asked for it to be read, and therefore they dismissed the claims. And your honor, we'd say that the same holds true here, and that's why when you look to the way that these particular claims have been pled in this particular complaint there isn't jurisdiction under the ESA non-discretionary duty citizenship provision. So, if you compare the actual claims that the appellants have here, they're asking for things like the inclusion of certain demographic information, habitat information, and while those might be examples of objective measurable criteria, they are not the only examples, and in this case there actually is different objective measurable criteria that the Fish and Wildlife Service selected. That's within its discretion to do, and because this complaint doesn't allege that there is no objective measurable criteria within the plan, it only takes issue with the fact that there isn't different and additional objective measurable criteria that they would like to have included. It doesn't fall within a non-discretionary duty citizenship provision as this court has defined them in the past. The appellants have noted that in paragraph 39 they quote the language from 1533 F1B, which is what is at issue here, and that they voluntarily that that isn't enough to allege a complaint. So, the Supreme Court has said that merely reciting the elements of a cause of action is not sufficient, and merely citing a legal conclusion is not sufficient. They would have to then make factual allegations that actually link up and connect to and show a plausible violation of the statute. Now here, while they've made those legal conclusions and they've stated the cause of action, they haven't actually pled facts that would fall within the statute. They've only alleged that essentially the service didn't include the type of additional information that they would have also liked to have included in the plan. Next, Your Honors, I'd like to address why this is also why recovery plans aren't a final agency action, and I think perhaps the most important role that recovery plans actually play in the recovery process, and the impact that they have on other recovery decisions that are made. And I think an important point here is that a lot of those other recovery actions are themselves challengeable in court, either because they're final agency actions under the APA, or because they fall under other sections of the ESA and citizen supervision that aren't an issue in this case. So, as this court and other courts have held, the recovery plan is not a determinative binding document. Instead, it's meant to serve as a guidepost to the agency as it is preparing for the recovery process. It's better thought of as sort of a map, but the service has the flexibility to make changes to it as it gains more information. So essentially, the recovery plan is the agency's best assessment at the beginning of the recovery process of what it will probably need to do in order to recover the species. But as recovery continues, it gains additional information. One of the ways it does this is that the statute mandates that every five years they do a review of every species, and as part of that review they have to take public notice and comment, where they ask for updated information about the status of the species. So this is a formal way in which they're able to gain new information that can then affect the recovery process. There's also plenty of informal ways that they do this. The statute explicitly allows for them to engage with tribal, state, private parties interested in conservation to gain updated information about the recovery process. So what part of the recovery plan is non-discretionary in the government's view? There's a non-discretionary duty to create one, to take notice and comment on it, to consider that notice and comment. And then I would say, Your Honor, they do have to include the three criteria that are at issue here, but once they've done that, once there's a binary yes or no, it's in the plan, that's where the court's review ends. So, for example, they do have to have some objective measurable criteria. They can't just have a plan that they do have to have an estimate for when they think the plan will be done. And they do have to have some site-specific management. If they said, we think this will cost a billion dollars, which is way too much, therefore we have a cost estimate in our recovery plan, is your position no court review? In that case, yes, Your Honor. Because what a non-discretionary duty provision asks is whether or not they yes or no checked the box and took the action. Now, I think what's important to remember is that that number doesn't have a meaningful impact on any other action. They can say that it's going to cost a billion dollars and figure out a year later, no, it's going to cost half of that. But the fact that they said it was going to cost a billion dollars doesn't have any direct and meaningful impact on either the Fish and Wildlife Service or any other third party just because they included it in the plan. I think this is in keeping with how this Court has looked at these sort of issues in the past. A non-discretionary duty provision is useful for situations when the statute mandates, for example, that a report must be issued by X date. And this Court can look and decide on the face of a complaint whether or not that report has, they've alleged that that report has in fact been issued or not. But it's not as useful for situations where what the plaintiffs are really looking for is an arbitrary and capricious review of what's happened there. And as the name sort of suggests, a non-discretionary duty statute isn't really an appropriate place to ask questions about how the agency used its discretion. That would sort of be in tension with the fact that it's about a non-discretionary duty in the first place. What is your best authority for this notion that as long as the agency puts in some quantifiable number that that's their only obligation at this point and therefore there's no review? Do you have another case that says that? I would point, Your Honor, to this Court's decisions in Kennecott Copper, in Wild Earth Foundation, in Our Children's Earth, which are all cited in our brief, which I do think make it pretty clear that it's a pretty high level cursory review and it doesn't, it's not meant to dig into the right or wrongness or any other discretionary aspects of what it is that the agency was doing when putting that number in. Would you see the ESA provisions as providing independent jurisdiction assuming that a claim is made independent from the Administrative Procedure Act? Yes, Your Honor. I think that's correct. So this is a particularly narrow provision that they try to bring suit under here. The other thing that I'd say, Your Honor, is I don't think that this Court needs to decide where exactly to draw the line on how far you could go under the citizen suit provision in this particular case. This isn't a case where the appellants have alleged that this was an empty plan that just had a nonsense number in it that made no sense or that there were empty headings or anything like that. If you look to the actual nature of their claims, they go pretty far beyond what's required of the plaintiff. In your view, could there be some Rubicon the government could cross in which the numbers were just some plug number in a subsection of the recovery plan and therefore it would be reviewable? I think there probably is a line out there somewhere, Your Honor. Appellants talked about Evans, which was a decision by this Court, and I think part of what might have been motivating the Court in that situation, in addition to the fact that it was a fees case, was that what the plaintiffs alleged there was essentially that the economic analysis was really not an economic analysis at all because the way it was written was we don't have to include anything in our economic analysis if it's otherwise considered somewhere else. Sort of what they were alleging is you have defined economic analysis in a way that means that you don't have an economic analysis in the plan. So I think there may be situations like that where the Court could decide that the agency hadn't met some very minimum threshold for having these three statutory criteria in the plan. But again, I'd say that, Your Honor, that we don't even come close in this case. The Court has in the record before at the actual recovery plan, we cite in our brief to the places in the record where they have each of these three requirements. And in fact, the complaint isn't even alleging that these three requirements aren't in there. What they're really alleging is that there's not more and additional data that they think would be useful to the recovery process. Counsel, can I ask you some questions about claims 5 and 7? And I understand under section 1533F, recovery plan has to have objective measurable criteria. And I understand that and looking at claim 5, as I read claim 5, it seems to be saying that the plan here does not have objectively evaluable threats. And to give you an example, if you go to ER 135, 136, it uses phrases like effective management. Now if there are, if the plaintiffs are under alleging that terms like effective management are not, I guess, objective, you know, effective management, they're arguing, well, that can mean a lot of different things. You know, there are effective managers, there are ineffective managers. That's, it's not a hard data we can point to. If that's their, if that's what they're arguing in claims 5 and 7, that the language is not certain enough, I guess you can say, or objective enough, why wouldn't that be something they could challenge? Well, I'd say two things, Your Honor. First, I think that this plan still meets the objective measurable criteria standard and that they are putting, if you look at the table on 136, they've put hard numbers on the number in populations in each of these core areas that needs to meet this threshold. And again, this court's review of these issues is pretty narrow. But the other thing I'd say, Your Honor, is the district court actually invited appellants. He dismissed without prejudice and invited appellants to amend their complaint if there were additional facts that they could allege. And that's not what they did here, Your Honor. Instead, what they wanted to do was bring a much broader legal theory about what they're allowed to challenge. So I don't think really what was happening here was that they were trying to challenge these specific criteria based on the narrow statutory provision. But really what they're asking is for this court to come in and allow for a much broader, much more substantive review of what is in the recovery plan in the first place. But as to the question of whether the language is objective measurable criteria, you would point us, in the AR 135, you would point us to the chart. What about the idea of effective management? Could they challenge that? If that's the dominant, like if you look at the first paragraph here, it says if the primary threats have been effectively managed in each recovery unit, the long-term persistence of bull trout should be ensured. As I understand the complaint, they're saying, well, what does that mean? And that's not going to be very clear. Your response to that would be the chart. Yes. The other thing I would say, Your Honor, is this falls within the agency's discretion for good reason. So for example, in this court's decision in Greater Yellowstone Coalition talking about the delisting of the grizzly bear, in that case the Fish and Wildlife Service actually used the sort of demographic criteria that appellants are asking for in, I believe, item three here. And they met that criteria, and they tried to then delist the grizzly bear. And what the court said there was, well, you've met all of the recovery criteria you have. However, what your criteria plan didn't take into account, because it wasn't an issue at the time the plan was created, was the fact that there was going to be a decline in the whitebark pines. And that was going to have a negative impact on the grizzly bear. So you now can't delist because there's this new threat to the bears. So actually, this idea of focusing on managing threats effectively, especially for a species like the bull trout that is spread over such a vast area that lives in many different types of streams and lakes and faces very different localized threats, makes a lot of sense. And that's why this is the sort of issue that we want to leave to the agency's discretion in determining what kind of objective measurable criteria are going to be the right ones to try and get to a delisting determination and to try and recover the species. There's some circularity to that argument in the sense that in the seventh claim, for example, they say that the service hasn't provided clear evidence that a general finding of threats are managed can be made with certain certainty. So the threats are to be managed, but then you go back to 4F of the ESA and it talks about objective measurable criteria. So where do you find those objective measurable criteria so that you can meet 4F? Again, Your Honor, I would say that they are the specific population numbers that are included for each of these core areas. And then managing threats is further defined not just through this recovery plan, but through the six regional implementation plans that are referenced and incorporated in this plan. And I think it's important for the court to also know that there's also more specific core area specific plans that get made. These are very site specific localized harms with regard to the bull trout. The bull trout doesn't face the same issues in all of its different habitats. And so this was a reasonable within their discretion decision that the agency made that the best way to come up with criteria for when they were actually recovering the species would be to base them off of whether the threats in those specific localized areas were being appropriately managed. The other thing that I'd just like to highlight, Your Honors, is that these are all issues that can and will be challenged if the bull trout is ever delisted, or hopefully when the bull trout is delisted. And it's in those subsequent final agency actions where it's appropriate for groups like the appellants to come in and challenge a decision and see if it's based on the best available scientific data, and not at this point when it's just an internal guidance document meant to provide a roadmap towards a later final agency action. Because there's not jurisdiction under either the ESA or the APA, we would ask that this court uphold the district court's decision to dismiss these claims. Thank you. Your Honor, I think the court has really hit the nail on the head when you look at the only citation they provide for what are purportedly the objective measurable criteria, which is ER 135 to 136. That's just a table that says when 75% of the threats are effectively managed, we will delist. But as the court has correctly noted, we don't know what threats are. Those aren't defined. That's saved for some later date. We don't know what effective means, and we don't know what managed means. And that's specifically why Congress amended the ESA not once but twice, again in 1988, to make the requirements for a recovery plan very specific. Objective measurable criteria, and we just don't have that in this recovery plan. But again, that's getting to the merits of our lawsuit, and that is why we brought the lawsuit, because this plan so clearly lacks objective measurable criteria. But the district court didn't even allow us to get to that point where we look at the merits. And it seems that the government is standing before you arguing whether these are objective measurable criteria, and we would like to have that argument, but we would like to have it first before the district court on a substantive review of the merits. And this is precisely why it was not appropriate to dismiss for lack of jurisdiction, because you can't determine whether there are objective measurable criteria in the plan without a substantive review of the plan. And we would strongly disagree also with the government's proposition that you basically just need to have a heading in the recovery plan that says criteria, and that anything below that is immune from judicial review. That is not what Bene V. Speer said. That's not what this court held in Evans. Specifically, the government made this same argument in Evans, and it held that the substance of a critical habitat determination is discretionary. That's at 386 Fed Third at 883. And this court rejected that claim and held that the review of the substance of a critical habitat determination is an ESA citizen suit provision. And because that provision for critical habitat is even more broad than the mandatory language of the plan, can and should be brought under the ESA citizen supervision. And I see that I am out of time unless you have any further questions. It appears not. Thank you. Thank you. Thank you both for your argument this morning. The case just argued, Friends of the Wild Swan, an alliance for the Rockies versus the Fish and Wildlife Service is now submitted. We have Cole versus Gene by Gene is submitted on the briefs. Our next argument will be Agachak versus the United States.
judges: Hawkins, McKeown, Owens